UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

JEREMY L. BURRELL,

                    Plaintiff,                          Case No. 2:22-cv-97

v.                                                      Hon. Hala Y. Jarbou

UNKNOWN KIENITZ, et al.,

                    Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff

paid the full requisite filing fee. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110

Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under

federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be

granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. § 1915A;

42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v.

Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly

irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these

standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

### I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC)

at the Muskegon Correctional Facility (MCF) in Muskegon, Muskegon County, Michigan. The

events about which he complains, however, occurred at the Alger Correctional Facility (LMF) in

Munising, Alger County, Michigan. Plaintiff sues the following LMF officials in their individual and official capacities: General Office Assistant Unknown Kienitz and Prison Counselor Leffel. (Compl., ECF No. 1, PageID.2, 6.)

In Plaintiff's complaint, he alleges that on November 19, 2021, he received legal mail, which consisted of "a Notice of Hearing, Motion to Withdraw Request for Appointment of Counsel, and Motion to Amend 6.500 Motion," from his attorney Michael T. Maddaloni "through the regular mail." (*Id.*, PageID.7.)[1] Plaintiff claims that he "discovered" that it was Defendant Kienitz who "disregarded [Plaintiff's] right to have [his legal] mail opened in front of [him], when she opened it, copied it, and processed it through regular mail." (*Id.*) Plaintiff filed a grievance about the matter, and "Defendant Kienitz falsely claimed in her response to [Plaintiff's] grievance that 'this mail was not addressed as [legal] mail, that's why it was handled as regular mail.'" (*Id.*, PageID.7–8 (second alteration in original).) Plaintiff alleges that his attorney's bar number was on the envelope and it was labeled as "Atty Mail." (*Id.*, PageID.8.)

On December 8, 2021, Plaintiff had a court hearing via video, and at the hearing, Plaintiff learned that he had not received an affidavit that his attorney had sent to him "with the other pleadings." (*Id.*) Because Plaintiff had not received the affidavit, Plaintiff's attorney requested a "postponement of the hearing," which was granted by the court. (*Id.*) Plaintiff alleges that the "two pages of the pleadings that [his] attorney sent [him] were missing when Defendant Kienitz illegally processed [Plaintiff's] legal mail using the regular mail procedures." (*Id.*) Plaintiff filed a grievance about the matter. (*Id.*)

---

[1] In this opinion, the Court corrects the punctuation and capitalization in quotations from Plaintiff's complaint.

Plaintiff claims that the "illegal opening of [his] legal mail and the illegal confiscation of the affidavit that establishes [his] actual innocence did harm [him]" because "the initial hearing had to be postponed which [cost him] and [his] family more money." (*Id.*, PageID.9.)

On January 10, 2022, Plaintiff claims that Defendant Kienitz retaliated against him "for the grievance [he] filed against her when she rejected a (7) page letter addressed to [Plaintiff], falsely alleging that the letter was too voluminous to effectively search." (*Id.*) Upon receipt of the notice of mail rejection, Plaintiff requested an administrative hearing. (*Id.*, PageID.10.) Plaintiff claims that Defendant Leffel "went and spoke with Defendant Kienitz, and conducted the hearing without [Plaintiff], violating [his] right to be present, and upheld Defendant Kienitz's rejection." (*Id.*)

Plaintiff filed a grievance about the matter, and the step I respondent concluded that the seven-page letter "was not in violation of policy." (*Id.*, PageID.9.) "Defendant Kienitz continued her retaliation when, despite the step I respondent's recommendations and findings, [she] refused to process the mail and give it to [Plaintiff]." (*Id.*) Plaintiff then filed a step II grievance and "again it was determined that the mail was not in violation of policy." (*Id.*) Plaintiff claims that Defendant Kienitz again refused to give the mail to Plaintiff. (*Id.*) Plaintiff alleges that it was only after he filed a step III grievance that Defendant Kienitz complied. (*Id.*, PageID.10.)

On January 12, 2022, as Plaintiff was leaving Defendant Leffel's office, another inmate—inmate Doss—was entering the office. (*Id.*) Plaintiff claims that inmate Doss told Plaintiff that as he was entering Defendant Leffel's office, Defendant Leffel stated, "You ain't got nothing coming." (*Id.*) Inmate Doss thought that Defendant Leffel was talking to him; however, Defendant Leffel stated, "Not you; Burrell ain't got nothing coming for that grievance he wrote." (*Id.*)

Plaintiff claims that "Defendant Kienitz's retaliation continued when she improperly rejected a book that [was] not on the MDOC's restricted list," and then four days later, "she

improperly processed mail that was returned to [Plaintiff] from the post office, which consisted of a letter and two photos [Plaintiff] purchased off of the prisoner store." (*Id.*) Specifically, Plaintiff states that with respect to the returned mail, Defendant Kienitz "copied the letter and photos, confiscated the originals, and sent [Plaintiff] copies, depriving [Plaintiff] of [his] right to mail the property to whomever [he] wish[ed]." (*Id.*)

Based on the foregoing allegations, Plaintiff avers that Defendants interfered with his right to access the courts, violated his First Amendment rights by retaliating against him, and violated his right to due process under the Fourteenth Amendment. (*Id.*, PageID.5.) Additionally, liberally construing Plaintiff's complaint, as the Court is required to do, Plaintiff avers that Defendants interfered with the free flow of his mail in violation of the First Amendment. As relief, Plaintiff seeks compensatory and punitive damages. (*Id.*, PageID.5, 11.)

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556).

4

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.      Official Capacity Claims

Plaintiff indicates that he is suing Defendants Kienitz and Leffel in their individual and official capacities. (Compl., ECF No. 1, PageID.2, 6.)

A suit against an individual in his or her official capacity is equivalent to a suit against the governmental entity; in this case, the MDOC. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). The states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court.

*Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from a § 1983 suit under the Eleventh Amendment. *See, e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653–54 (6th Cir. 2010).

Here, Plaintiff seeks only monetary damages. An official capacity defendant is absolutely immune from monetary damages. *See Will*, 491 U.S. at 71; *Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453, 456 (6th Cir. 1998). Therefore, the Court will dismiss Plaintiff's claims against Defendants Kienitz and Leffel in their official capacities.

### B.      First & Fourteenth Amendments Access to the Courts Claims

Plaintiff alleges that Defendants Kienitz and Leffel interfered with his right to access the courts. (Compl., ECF No. 1, PageID.5.)

It is clearly established that prisoners have a constitutionally protected right of access to the courts under the First and Fourteenth Amendments. *See Lewis v. Casey*, 518 U.S. 343, 354 (1996); *Bounds v. Smith*, 430 U.S. 817, 821 (1977); *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Prison officials have a two-fold duty to protect a prisoner's right of access to the courts. *McFarland v. Luttrell*, No. 94-6231, 1995 WL 150511, at *3 (6th Cir. Apr. 5, 1995). First, they must provide affirmative assistance in the preparation of legal papers in cases involving constitutional rights, in particular criminal and habeas corpus cases, as well as other civil rights actions relating to the prisoner's incarceration. *Id.* (citing *Bounds*, 430 U.S. at 824–28). Second, the right of access to the courts prohibits prison officials from erecting any barriers that may impede the inmate's accessibility to the courts. *Id.* (citing *Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992)); *see also Bounds*, 430 U.S. at 822 (citing *Ex parte Hull*, 312 U.S. 546, 549 (1941)).

In order to state a viable claim for interference with his access to the courts, a plaintiff must show actual injury to pending or contemplated litigation. *See Lewis*, 518 U.S. at 349; *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001); *Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. In other words, a plaintiff must plead and demonstrate that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a non-frivolous legal claim. *Lewis*, 518 U.S. at 351–53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). The United States Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc). Moreover, the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (discussing that *Lewis* changed actual injury to include requirement that action be non-frivolous).

In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.*

Here, Plaintiff alleges that on November 19, 2021, he received legal mail, which consisted of "a Notice of Hearing, Motion to Withdraw Request for Appointment of Counsel, and Motion to Amend 6.500 Motion," from his attorney Michael T. Maddaloni "through the regular mail." (Compl., ECF No. 1, PageID.7.) Plaintiff claims that he "discovered" that it was Defendant Kienitz who "disregarded [Plaintiff's] right to have [his legal] mail opened in front of [him], when she opened it, copied it, and processed it through regular mail." (*Id.*) Subsequently, during a court hearing via video on December 8, 2021, Plaintiff realized that he had not received an affidavit that his attorney had sent to him "with the other pleadings." (*Id.*) Because Plaintiff had not received the affidavit, Plaintiff's attorney requested a "postponement of the hearing," which was granted by the court. (*Id.*) Plaintiff claims that the "illegal opening of [his] legal mail and the illegal confiscation of the affidavit that establishes [his] actual innocence did harm [him]" because "the initial hearing had to be postponed which [cost him] and [his] family more money." (*Id.*, PageID.9.)

As an initial matter, Plaintiff's complaint is devoid of any allegations to suggest that Defendant Leffel had any involvement with the alleged interference with Plaintiff's access to the courts. (*See id.*, PageID.10 (alleging that Defendant Leffel held an administrative hearing regarding Defendant Kienitz's rejection of non-legal mail, and alleging that on January 12, 2022, Defendant Leffel stated, "You ain't got nothing coming").) For that reason alone, Plaintiff's access to the courts claim against Defendant Leffel will be dismissed. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights).

With respect to Defendant Kienitz, although Plaintiff references having a court hearing via video, Plaintiff does not identify the cause of action for which the hearing was held. Plaintiff also does not specifically allege that his claims in this action were non-frivolous. However, Plaintiff indicates that one of the documents that his attorney sent to him was a "Motion to Amend 6.500 Motion" (Compl., ECF No. 1, PageID.7), suggesting that Plaintiff had filed a post-conviction motion for relief from judgment under Michigan Court Rule 6.500 in the state court. Therefore, at this stage of the proceedings, the Court assumes, without deciding, that the underlying cause of action at issue was the type of action for which there can be an actual injury.

However, Plaintiff was represented by counsel in the underlying action, and generally, an inmate's right of access to the courts is fully protected if he is represented by counsel. *Skelton v. Pri-Cor, Inc.*, 963 F.2d 100, 104 (6th Cir. 1991); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984) (citing *Holt v. Pitts*, 702 F.2d 639, 640 (6th Cir. 1983)) (discussing that, once counsel has been appointed, the state has fulfilled its constitutional obligation to provide access to the courts); *see also United States v. Sammons*, 918 F.2d 592, 602 (6th Cir. 1990) (finding that defendant's waiver of right to court-appointed counsel and decision to represent self in defense of criminal prosecution constituted waiver of right of access to law library). Furthermore, setting aside this issue, Plaintiff's access to the courts claim fails to state a claim because Plaintiff does not allege that the postponement of the December 8, 2021, hearing resulted in any harm to the underlying state court action. Instead, Plaintiff contends that he was harmed because he had to pay his attorney "more money" due to the postponement of the initial hearing. (Compl., ECF No. 1, PageID.9.) However, paying more money to the attorney that Plaintiff presumably hired does not constitute an injury for the purposes of an access to the courts claim because Plaintiff has failed to show that this resulted in any lost remedy in the underlying action. *See Harbin-Bey v. Rutter*, 420 F.3d 571,

578 (6th Cir. 2005) ("Examples of actual prejudice to pending or contemplated litigation include having a case dismissed, being unable to file a complaint, and missing a court-imposed deadline." (citing *Jackson v. Gill*, 92 F. App'x 171, 173 (6th Cir. 2004))).

Because Plaintiff has failed to show any lost remedy, he has failed to state a claim for denial of access to the courts. Accordingly, for all of the reasons set forth above, Plaintiff's access to the courts claim against Defendants Kienitz and Leffel will be dismissed.

### C.      First Amendment Retaliation Claims

Plaintiff also alleges that Defendants Kienitz and Leffel violated his First Amendment rights by retaliating against him. (Comp., ECF No. 1, PageID.5, 9–10.)

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to show that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

### 1.      Protected Conduct

With respect to the first element of a First Amendment retaliation claim, an inmate has a right to file "non-frivolous" grievances against prison officials on his own behalf, whether written or oral. *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018); *Mack v. Warden Loretto FCI*, 839 F.3d 286, 298–99 (3d Cir. 2016) ("[The prisoner's] oral grievance to [the prison officer] regarding the anti-Muslim harassment he endured at work constitutes protected activity under the First

Amendment."); *Pearson v. Welborn*, 471 F.3d 732, 741 (7th Cir. 2006) ("[W]e decline to hold that legitimate complaints lose their protected status simply because they are spoken."); *see also Pasley v. Conerly*, 345 F. App'x 981, 984–85 (6th Cir. 2009) (finding that a prisoner engaged in protected conduct by *threatening* to file a grievance). "Nothing in the First Amendment itself suggests that the right to petition for redress of grievances only attaches when the petitioning takes a specific form." *Holzemer v. City of Memphis*, 621 F.3d 512, 521 (6th Cir. 2010) (quoting *Pearson*, 471 F.3d at 741) (finding that a conversation constituted protected petitioning activity).

In this action, Plaintiff references filing several grievances. Because the filing of grievances constitutes protected activity, the Court assumes, without deciding, that Plaintiff has stated the first element of a First Amendment retaliation claim with respect to his grievances.

### 2.     Adverse Action

To establish the second element of a retaliation claim, a prisoner-plaintiff must show adverse action by a prison official sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Thaddeus-X*, 175 F.3d at 396. The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendant's conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002).

### a.     Rejection and Processing of Mail

Plaintiff alleges that on January 10, 2022, Defendant Kienitz improperly rejected a seven-page letter that was sent to Plaintiff because she "falsely alleg[ed] that the letter was too voluminous to effectively search." (Compl., ECF No. 1, PageID.9.) Plaintiff alleges that despite the step I respondent determining that Plaintiff could receive the letter, Defendant Kienitz "refused" to give the letter to Plaintiff until he filed a step III grievance. (*Id.*, PageID.9–10.) Plaintiff also alleges that Defendant Kienitz "rejected a book that [was] not on the MDOC's

11

restricted list," and then four days later, "she improperly processed mail that was returned to

[Plaintiff] from the post office, which consisted of a letter and two photos that [Plaintiff] purchased

off of the prisoner store." (*Id.*, PageID.10.)

At this stage of the proceedings, the Court assumes, without deciding, that the alleged

improper rejection and improper processing of Plaintiff's mail constitutes adverse action.

###### b.    Verbal Threat

A specific threat of harm may satisfy the adverse-action requirement if it would deter a

person of ordinary firmness from exercising his or her First Amendment rights, *see, e.g.*,

*Thaddeus-X*, 175 F.3d at 396, 398 (discussing threat of physical harm); *Smith v. Yarrow*, 78 F.

App'x 529, 542 (6th Cir. 2003) (discussing threat to change drug test results). However, certain

threats or deprivations are so vague or *de minimis* that they do not rise to the level of being

constitutional violations. *Thaddeus-X*, 175 F.3d at 398; *Smith*, 78 F. App'x at 542.

Here, Plaintiff claims that another inmate told Plaintiff that he had heard Defendant Leffel

say, "You ain't got nothing coming," and that she had indicated to the other inmate, "Not you;

Burrell ain't got nothing coming for that grievance he wrote." (Compl., ECF No. 1, PageID.10.)

The Court concludes that such a vague statement would not deter a person of ordinary firmness

from exercising his or her First Amendment rights. *See, e.g.*, *Hardy v. Adams*, No. 16-2055, 2018

WL 3559190, at *3 (6th Cir. Apr. 13, 2018) ("The alleged threat by Adams that she would make

Hardy's life 'hell' is simply too vague to pass this threshold."); *Shisler v. Golladay*, No. 2:19-cv-

80, 2019 WL 2590693, at *4 (W.D. Mich. June 25, 2019) (concluding that Golladay's threat that

the ticket would be the least of the plaintiff's worries was "simply too vague" to support a First

Amendment retaliation claim); *Dahlstrom v. Butler*, No. 2:18-cv-101, 2019 WL 91999, at *11

(W.D. Mich. Jan. 3, 2019) ("Krause's threat[--to 'get' a prisoner who files a grievance on Krause

and 'steps out of line'--] is too vague and non-specific to deter a person of ordinary firmness from

engaging in protected conduct."); *Yates v. Rogers*, No. 2:18-cv-180, 2018 WL 6629366, at \*7 (W.D. Mich. Dec. 19, 2018) ("Defendant's vague threat to 'get' Plaintiff does not carry the same seriousness . . . ."); *Johnson v. Govern*, No. 2:17-cv-125, 2018 WL 6321548, at \*2 (W.D. Mich. Dec. 4, 2018) ("Govern's alleged threat to 'put a case' on Johnson . . . was too vague to constitute adverse action."). Accordingly, Plaintiff's retaliation claim against Defendant Leffel is properly dismissed.

### 3. Retaliatory Motive

To satisfy the third element of a retaliation claim, Plaintiff must allege facts that support an inference that the alleged adverse action was motivated by the protected conduct. In this action, Plaintiff merely alleges the ultimate fact of retaliation; however, he alleges no facts from which to reasonably infer that Defendant Kienitz was motivated by any protected conduct. Plaintiff's allegations against Defendant Kienitz rest entirely on a conclusory allegation of temporal proximity—that he had filed grievances against Defendant Kienitz around the time that Defendant Kienitz took adverse actions against him.

Although, temporal proximity "may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive,'" the Sixth Circuit, has been reluctant to find that temporal proximity between the filing of a grievance and an official's adverse conduct, standing alone, is sufficient to establish a retaliation claim. *Compare Muhammad v. Close*, 379 F.3d 413, 417–18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)), *and Briggs v. Westcomb*, No. 19-1837 (6th Cir. Mar. 10, 2020) (unpublished) (holding that allegations of temporal proximity were sufficient where the filing of retaliatory misconduct by correctional officers occurred six days after Plaintiff filed a grievance against a medical provider, but only one day after the provider learned of the grievance), *with Hill*, 630 F.3d

at 476 (discussing that the Sixth Circuit has been reluctant to find that temporal proximity alone shows a retaliatory motive).

Here, although Plaintiff's allegations suggest that Defendant Kienitz knew about the grievance Plaintiff filed in November of 2021, because Plaintiff states that Defendant Kienitz responded to that grievance, Plaintiff fails to allege any facts suggesting that Defendant Kienitz was motivated by Plaintiff's grievance when she rejected his mail on January 10, 2022, pursuant to the MDOC's policy and continued to reject his mail until it was determined to be permissible. Likewise, Plaintiff fails to allege any facts to suggest that Defendant Kienitz was motivated by subsequent grievances that Plaintiff filed when she rejected a book that was sent to him in March of 2022 and when she processed mail that was sent to him around that time. (*See* Compl., ECF No. 1, PageID.10; Grievance, ECF No. 1-8, PageID.52 (indicating that Plaintiff had received a notice of rejection for a book on March 14, 2022).)

Under these circumstances, the suggestion of temporal proximity alone is insufficient to show a retaliatory motive. *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987) ("[A]lleging merely the ultimate fact of retaliation is insufficient."). Furthermore, such "conclusory allegations of retaliatory motive 'unsupported by material facts'" do not state a claim under § 1983. *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (holding that in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial" (internal quotation marks omitted)). Therefore, assuming that Plaintiff alleged sufficient facts to show that Defendant Kienitz's actions constitute adverse actions, because Plaintiff fails to allege

any facts to suggest that Defendant Kienitz was motivated by Plaintiff's protected conduct, Plaintiff fails to state a First Amendment retaliation claim against Defendant Kienitz.

Accordingly, for all of the reasons set forth above, Plaintiff's First Amendment retaliation claims will be dismissed.

### D.      Fourteenth Amendment Due Process Clause Claims

Plaintiff alleges that his due process rights were violated when Defendant Kienitz rejected a seven-page letter that had been sent to Plaintiff and when Defendant Leffel held an administrative hearing regarding the rejection. (Compl., ECF No. 1, PageID.5, 10.)

The elements of a procedural due process claim are (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)).

It is well established that Plaintiff has a liberty interest in receiving his mail. *See Stanley v. Vining*, 602 F.3d 767, 769 (6th Cir. 2010) (citing *Procunier v. Martinez*, 416 U.S. 396, 428 (1974), *overruled on other grounds by Thornburgh v. Abbott*, 490 U.S. 401 (1989)). The Sixth Circuit has held that an incoming mail censorship regulation must provide "that notice of rejection be given to the inmate-recipient" and that the inmate-recipient be given the opportunity to challenge the rejection. *Martin v. Kelley*, 803 F.2d 236, 243–44 (6th Cir. 1986). The regulation "must also provide for an appeal of the rejection decision to an impartial third party." *Id.* at 244.

It is clear from Plaintiff's complaint and the attachments to his complaint that he received the process to which he was due. Plaintiff received a notice of mail rejection for his letter. (ECF No. 1-6, PageID.47.) Additionally, Plaintiff requested a hearing and was provided that hearing,

15

where he had opportunities to challenge the rejection. (*See id.*, PageID.48.) MDOC Policy Directive 05.03.118 also allows for appeal of the decision. MDOC Policy Directive 05.03.118 ¶¶ EEE, FFF (eff. Mar. 1, 2018). Likewise, Plaintiff received notice and an opportunity to challenge the rejection of the book he received in March 2022, and he did so by filing a grievance about the matter.[2] (*See* ECF No. 1-8, PageID.52 (indicating that on March 14, 2022, Plaintiff "received a Notice [of] Rejection in the mail" for a book that although not on the restricted list was deemed to "encourage[e] and provid[e] instruction in the commission of criminal activity" in violation of MDOC Policy Directive 05.03.118)).

Although with respect to Plaintiff's seven-page letter, Plaintiff alleges that Defendant Leffel "went and spoke with Defendant Kienitz, and conducted the hearing without [Plaintiff]," Plaintiff's own statements in the exhibits attached to the complaint belie this assertion. Specifically, in a grievance dated January 12, 2022, which Plaintiff filed about the hearing for the mail rejection, Plaintiff asserted that Defendant Leffel "failed to conduct a proper administrative hearing" because Defendant Leffel did not "bring the 7-page 2-sided letter to the hearing or a copy of the same as required" by the MDOC's policy. (Grievance, ECF No. 1-3, PageID.27.) There is no indication that Plaintiff did not have an opportunity to be heard at the hearing. In fact, Plaintiff ultimately received the letter because a subsequent official determined that it was permissible for Plaintiff to receive it. Under these circumstances, Plaintiff has failed to allege sufficient facts to show that he did not receive the process to which he was due.

Moreover, to the extent that Plaintiff alleges that Defendant Leffel violated the MDOC's policy, he fails to allege a constitutional claim. Claims under § 1983 can only be brought for

---

[2] Plaintiff does not indicate whether he requested an administrative hearing regarding the rejection of the book.

"deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994); *see also Laney v. Farley*, 501 F.3d 577, 580–81 & n.2 (6th Cir. 2007). Additionally, Courts routinely have recognized that a prisoner does not enjoy any federally protected liberty or property interest in state procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 250 (1983); *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); *Sweeton*, 27 F.3d at 1164; *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992).

For all of these reasons, Plaintiff's Fourteenth Amendment procedural due process claims will be dismissed.

### E.      Interference with Mail Claims

Liberally construing Plaintiff's complaint, as the Court is required to do, Plaintiff avers that Defendants Kienitz and Leffel inferred with the free flow of his incoming and outgoing mail.

"A prisoner's right to receive mail is protected by the First Amendment." *Knop v. Johnson*, 977 F.2d 996, 1012 (6th Cir. 1992) (citing *Pell v. Procunier*, 417 U.S. 817, 822 (1974)). "Mail is one medium of free speech, and the right to send and receive mail exists under the First Amendment." *Al-Amin v. Smith*, 511 F.3d 1317, 1333 (11th Cir. 2008) (citing *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 427 (1993)). A prisoner, however, retains only those First Amendment freedoms which are "not inconsistent with his status as a prisoner or with legitimate penological objectives of the corrections systems." *Martin v. Kelley,* 803 F.2d 236, 240 n.7 (6th Cir. 1986) (*quoting Pell*, 417 U.S. at 822); *see Turner v. Safley,* 482 U.S. 78 (1987).

### 1. Defendant Leffel

Plaintiff's allegations against Defendant Leffel regarding Defendant's interference with the free flow of Plaintiff's mail are scarce. Plaintiff alleges that Defendant Leffel held an administrative hearing regarding the rejection of Plaintiff's seven-page letter, and that Defendant Leffel upheld the rejection. (Compl., ECF No. 1, PageID.10.) Plaintiff does not allege that Defendant Leffel had any further involvement with the processing of Plaintiff's mail or with Plaintiff's receipt of mail.

The fact that Defendant Leffel presided over an administrative hearing does not itself implicate the protections of the First Amendment. *See Frazier*, 41 F. App'x at 764. Moreover, as explained below, the initial rejection of Plaintiff's seven-page letter—which Plaintiff was ultimately permitted to receive—did not violate Plaintiff's First Amendment rights. *See infra* Part E.2.b.i. Therefore, Plaintiff's claim against Defendant Leffel regarding the interference with his mail will be dismissed.

### 2. Defendant Kienitz

#### a. Legal Mail

Plaintiff alleges that on one occasion, he received legal mail from his attorney "through the regular mail." (Compl., ECF No. 1, PageID.7.) Plaintiff claims that he "discovered" that it was Defendant Kienitz who "disregarded [Plaintiff's] right to have [his legal] mail opened in front of [him], when she opened it, copied it, and processed it through regular mail." (*Id.*) Plaintiff also alleges that he did not receive an affidavit that his attorney had sent at the same time as the other legal mail that was processed as regular mail. (*Id.*, PageID.8.)

The Sixth Circuit has held that prison regulations governing "legal" mail are subject to a heightened standard than those governing general mail. *See Sallier v. Brooks*, 343 F.3d 868, 873–74 (6th Cir. 2003) (finding that legal mail is entitled to a heightened level of protection to avoid

impinging on a prisoner's legal rights, the attorney-client privilege, and the right to access the courts). The ability of a prisoner "to receive materials of a legal nature" implicates a fundamental right. *Kensu v. Haigh*, 87 F.3d 172, 174 (6th Cir. 1996); *see Sallier*, 343 F.3d at 873–74 (finding that legal mail is entitled to a heightened level of protection to avoid impinging on a prisoner's legal rights, the attorney-client privilege, and the right to access the courts). Courts have therefore extended protections to prisoners' legal mail that do not exist for general mail. For example, although "prison officials may open prisoners' incoming mail pursuant to a uniform and evenly applied policy with an eye to maintaining prison security," *Lavado v. Keohane*, 992 F.2d 601, 607 (6th Cir. 1993), "the opening of 'legal mail' should generally be in the inmate's presence." *Kensu*, 87 F.3d at 174 (citing *Wolff*, 418 U.S. at 576–77).

"[W]hat constitutes 'legal mail' is a question of law." *Sallier*, 343 F.3d at 871. "Mail from an attorney . . . is legal mail as a matter of law." *ACLU Fund of Mich. v. Livingston Cnty.*, 796 F.3d 636, 643 (6th Cir. 2015) (citing *Sallier*, 343 F.3d at 877). This includes where the attorney does not have an established attorney-client relationship. *See id.*

The Sixth Circuit has held that "'blatant disregard' for mail handling regulations concerning legal mail violates constitutional protections," *Merriweather v. Zamora*, 569 F.3d 307, 317 (6th Cir. 2009) (citing *Lavado*, 992 F.2d at 609), and that "[t]wo or three pieces of mail opened in an arbitrary or capricious way suffice to state a claim." *Id.* (citing *Sallier*, 343 F.3d at 879–80; *Lavado*, 992 F.2d at 609). However, "isolated instances of interference with prisoners' mail" may not rise to the level of a constitutional violation under the First Amendment. *See Johnson v. Wilkinson*, No. 98-3866, 2000 WL 1175519 (6th Cir. Aug. 11, 2000) ("This random and isolated interference with Johnson's mail did not violate his constitutional rights." (citation omitted)); *see also Gardner v. Howard*, 109 F.3d 427, 431 (8th Cir. 1997) (holding that an "isolated incident,

without any evidence of improper motive or resulting interference with [the inmate's] right to counsel or to access to the courts, does not give rise to a constitutional violation" (citations omitted)); *Okoro v. Scibana*, 63 F. App'x 182, 184 (6th Cir. 2003) (stating that "Okoro was only able to provide one specific incident where he allegedly did not receive the full contents of a letter from his wife," and concluding that "[s]uch a random and isolated incident is insufficient to establish a constitutional violation" (citation omitted)); *cf. Colvin v. Caruso*, 605 F.3d 282, 293 (6th Cir. 2010) (citing *Johnson* for the holding that "isolated interference" with prisoners' rights may not rise to the level of a First Amendment violation).

In this action, Plaintiff alleges that on one occasion, legal mail from his attorney was processed as if it was non-legal mail. (Compl., ECF No. 1, PageID.7.) Plaintiff contends that Defendant Kienitz was the LMF staff member who did this, and that as a result, Plaintiff's legal mail was opened outside of his presence. (*Id.*, PageID.8.) The Court recognizes that legal mail is entitled to additional protections and that it is possible that under some circumstances, even one instance of improperly processing legal mail could violate an inmate's constitutional rights. However, the facts alleged by Plaintiff are not such a circumstance.

Although "[t]wo or three pieces of mail opened in an arbitrary or capricious way suffice to state a claim," Plaintiff does not allege that his legal mail was opened out of his presence on multiple occasions. *Merriweather*, 569 F.3d at 317 (citing *Lavado*, 992 F.2d at 609). Plaintiff alleges that one envelope of legal mail was opened outside of his presence on one occasion, and he believes that as a result, he did not receive all of the mail that was included in the envelope. This does not suggest blatant disregard for mail handling by Defendant Kienitz. *See Anderson v. Andrews*, No. 2:09-cv-109, 2010 WL 3475030, at *8 (W.D. Mich. June 29, 2010) ("[T]he opening of one piece of properly marked legal mail outside the prisoner's presence is not enough to state a

20

claim."), *report & recommendation adopted*, 2010 WL 3474988 (W.D. Mich. Sept. 2, 2010).
Plaintiff therefore fails to show that Defendant Kienitz violated his constitutional rights when she
processed his legal mail as non-legal on one occasion. The Court next addresses Plaintiff's claims
regarding the alleged interference with his non-legal mail.

**b.      Non-Legal Mail**

As set forth above, the First Amendment protects a prisoner's receipt of incoming mail,
subject to limitation by legitimate penological interests. *See Knop*, 977 F.2d at 1012; *Sheets v.
Moore*, 97 F.3d 164, 166 (6th Cir. 1996). Incoming mail has long been recognized to pose a greater
threat to prison order and security than outgoing mail. *Thornburgh*, 490 U.S. 401; *Turner*, 482
U.S. 78.

To determine whether prison restrictions on mail are reasonably related to a legitimate
penological interest, the Court must assess the restriction by reference to the following factors:
(1) whether there exists a valid, rational connection between the prison regulation and the
legitimate governmental interest; (2) whether there remain alternative means of exercising the
right; (3) the impact that accommodation of the asserted constitutional right will have on guards
and other inmates, and on the allocation of prison resources generally; and (4) whether there are
ready alternatives available that fully accommodate the prisoner's rights at *de minimis* cost to valid
penological interests. *Turner*, 482 U.S. at 89–90. The Supreme Court has held that prison
regulations (similar to those in Michigan) allowing prison officials to reject any publication for
good reason pursuant to specific criteria did not violate the First Amendment because the
regulations were reasonably related to legitimate penological interests. *Thornburgh*, 490 U.S.
at 413.

In *Thornburgh*, the Supreme Court addressed whether the Federal Bureau of Prisons'
restrictions on various sources and types of incoming publications violated the First Amendment.

The Court upheld a regulation that barred, among other things, all "sexually explicit material which by its nature or content poses a threat to the security, good order, or discipline of the institution, or facilitates criminal activity." *Id.* at 405 n.5. The Court recognized the legitimacy of the prison's security interest, observing that incoming communications addressed to a general audience, which were likely to circulate, had the capacity to create "coordinated disruptive conduct." *Id.* at 412. Applying the *Turner* standard to both facial and as-applied challenges, the Supreme Court concluded that a Bureau of Prisons' ban on certain types and sources of publications withstood a facial challenge but was unconstitutional as applied to certain exclusions at issue in the case. *Id.* at 404. In considering the availability of alternative means of exercising the right, the Court indicated that the "'right' in question must be viewed sensibly and expansively." *Id.* at 417. Applying that principle, the Court found that the availability-of-alternative-means inquiry was satisfied because "the regulations permit a broad range of publications to be sent, received, and read." *Id.* at 418. Finally, in determining whether there existed obvious, easy alternatives to the restriction, the *Thornburgh* Court recognized that the fact that the regulation bears a reasonable relationship to the legitimate governmental interest is evidence that no obvious and easy alternative is available, and vice versa. *Id.* The *Thornburgh* Court concluded that the "regulations, on their face, [we]re not an 'exaggerated response' to the problem at hand," and therefore "no obvious, easy alternative ha[d] been established." *Id.*

### i.    Voluminous Mail

Plaintiff first complains about the initial rejection of his two-sided, seven-page letter. In his complaint, Plaintiff identifies the penological interest that motivated the rejection of the letter. According to Plaintiff, the letter was rejected by Defendant Kienitz because she determined that it "was too voluminous to effectively search and was in violation of [MDOC Policy Directive]

05.03.118." (Compl., ECF No. 1, PageID.9.) This Court has previously recognized the legitimacy of the penological interest that is furthered by a rule limiting the volume of incoming mailings. *See Young v. Weathersby*, No. 1:09-cv-67, 2010 WL 3909463 (W.D. Mich. Sept. 15, 2010), *report & recommendation adopted*, 2010 WL 39093453 (W.D. Mich. Sept. 30, 2010). In *Young*, MDOC staff rejected a 48-page mailing because it was too voluminous to readily review for contraband or other threats. *Id.* at \*8. The Court stated:

> There is a valid rational connection between the prison regulation . . . and the legitimate governmental interests put forward to justify it. Plaintiff retains the ability to receive other correspondence. Accommodation of the right plaintiff claims would effectively destroy the State's ability to keep harmful material out of the prison. Prisoners could simply hide harmful content within a sufficiently large quantity of other papers to thwart detection. There are no ready alternatives available that fully accommodate the right plaintiff claims at a de minimis cost to valid penological objectives.

*Id.* In *Hurick v. Berghuis*, the Court reached the same conclusion. No. 1:13-cv-61, 2014 WL 1256000, at \*11 (W.D. Mich. Mar. 26, 2014) (adopting report and recommendation) (concluding that "the policy set forth in the memorandum authorizing rejection of voluminous packages of mail due to inability to effectively search them is reasonably related to the prison's interests of maintaining the good order and security of the facility). Other courts have also routinely recognized that the accommodation of an inmate's right to receive any volume of mail would increase the danger of contraband entering the prison and jeopardize the safety of guards and other inmates, and that effective screening of voluminous mailings would consume an inordinate amount of prison resources. *See, e.g.*, *Hall v. Johnson*, 224 F. Supp. 2d 1058, 1060 (E.D. Va. 2002) (upholding policy where all general purpose correspondence over one ounce in weight was rejected because it allowed mail room personnel to quickly scan a shorter document for potential security risks, such as escape plans); *Harksen v. Braxton*, No. 7:04-cv-00243, 2004 WL 5645580, at \*3 (W.D. Va. Nov. 9, 2004) (upholding rule that correspondence must not exceed one ounce or

five pages per envelope so that prison staff "are not overwhelmed with voluminous correspondences," and discussing that "[t]he rule does not limit the amount of mail a prisoner receives, it merely optimizes screening procedures" (citation omitted)); *McKenzie v. Fabian*, No. 07-4441, 2009 WL 2982641, at \*10 (D. Minn. Sept. 11, 2009) (upholding weight limit on incoming mail because the policy "is rationally related to its objectives of preventing contraband from entering the prison and taking into account the finite resources of the prison").

Accepting Plaintiff's allegations as true, consideration of the four *Turner* factors puts an end to his "regular mail" First Amendment claim regarding the seven-page letter he received. There is a valid rational connection between the rule limiting the volume of incoming mail and the legitimate governmental interests which it furthers: preserving the safety of the institution from contraband and the resources of the prison expended to ensure that safety. Because volume dictates risk and demands resources, there appears to be no ready alternative to a volume limit.

The fact that a subsequent official determined that Plaintiff could receive the seven-page letter does not change the analysis. Defendant Kienitz's initial rejection of the letter was based on a policy for which there is a valid rational connection between the policy and the legitimate governmental interests which the policy furthers. Although it is clear that Plaintiff disagreed with Defendant Kienitz's determination, and during the MDOC's appeals process, a subsequent official concluded that Plaintiff could receive the letter, Defendant Kienitz's initial determination that Plaintiff's double-sided seven-page letter violated the MDOC's voluminous mail policy was not inconsistent with the protections of the First Amendment. Moreover, the Court notes that Plaintiff

ultimately was permitted to receive the letter.[3] Accordingly, Plaintiff's First Amendment claim against Defendant Kienitz regarding the initial rejection of his seven-page letter will be dismissed.

### ii.      Rejection of Book

Plaintiff next claims that Defendant Kienitz "improperly rejected a book that [was] not on the MDOC's restricted list." (Compl., ECF No. 1, PageID.10.) In his complaint, Plaintiff references filing grievances that addressed this issue, and Plaintiff also attached these grievances to his complaint. (*Id.* (referencing Exhibit H); ECF No. 1-8, PageID.51–54.) As set forth in Plaintiff's grievance, Plaintiff received a notice of rejection on March 14, 2022, for a book titled, "So Far From Scarface: Th[e] Saga," due to "accounts of rape and drugs" in the book. (ECF No. 1-8, PageID.52.) Plaintiff filed a step I grievance about the rejection, and in the grievance response, the respondent noted that Defendant Kienitz rejected the book on March 11, 2022, "due to the book containing material that she believed was 'encouraging or providing instruction in the commission of criminal activity,'" in violation of MDOC Policy Directive 05.03.18. (*Id.*) The respondent further states: "The material was reviewed, and it is determined that it does violate the

---

[3] It appears that Plaintiff believes that there was an unnecessary delay in his receipt of the letter after it was approved. (*See, e.g.*, Compl., ECF No. 1, PageID.9–10.) Plaintiff attached his grievances regarding this matter to his complaint, and the grievances show that he received a response to his step I grievance on February 16, 2022, advising that he would be permitted to receive the letter (ECF No. 1-2, PageID.21), and then he received a response to his step II grievance on March 9, 2022 (*Id.*, PageID.23.) The step II grievance response indicates that the letter was given to Plaintiff on March 8, 2022. (*Id.*) Plaintiff suggests that he did not receive the letter until he filed a step III grievance. (Compl., ECF No. 1, PageID.10.) Regardless, any such delay appears to be related to Plaintiff's appeals through the grievance process, and Plaintiff does not allege that he suffered any harm due to the delay.

policy. The book discusses Narcotics, Coercion, Rape, Mutilation and Murder and does encourage criminal activity. As such the book violates MDOC Policy 05.08.113." (*Id.*)

This Court, as well as other courts, have held that prison officials have a legitimate interest in preventing prisoners from possessing material that encourages or provides instruction for the commission of criminal activity. *See, e.g.*, *Markham v. Mote*, No. 1:12-cv-1063, 2014 WL 4662185, at *3 (W.D. Mich. Sept. 18, 2014) (adopting report and recommendation) (holding that "legitimate penological interests were reasonably served by (1) the MDOC policy that prevented inmates from receiving mail that may facilitate criminal activity, and (2) preventing Plaintiff from receiving the particular book in question" (citation omitted)); *Peters v. Simpson*, No. 1:15-cv-751, 2015 WL 5608237, at *11–12 (W.D. Mich. Sept. 23, 2015) (screening Plaintiff's complaint and concluding that Plaintiff failed to state a First Amendment claim regarding the rejection of books about electrical wiring and welding because "[t]he information in these books could be used by a prisoner to disable electrical systems in the facility to aid in an escape attempt or to upset the operations of the facility" and the prison had a "legitimate penological interest in protecting the prison population from having access to information about wiring schemes and welding methods"); *Wells v. Vannoy*, 546 F. App'x 340, 342 (5th Cir. 2013) (discussing that the prison official "rejected [the book] *Pimpology* because it describes techniques of manipulation and control, techniques that prison officials have deemed a potential threat to safety," and that "[a]lthough [the prisoner-plaintiff] disputes [the prison official's] interpretation of the book, we give deference to determinations by prison officials" (citation omitted)); *cf. Thompson v. Campbell*, 81 F. App'x 563, 567 (6th Cir. 2003) (discussing that "the relationship between the policy (prohibiting materials that advocate anarchy or contain obscenity) and the goals (security, order, and rehabilitation) is not 'so remote as to render the policy arbitrary or irrational,'" and that

"[b]ecause anarchy and obscenity are incompatible with security, order, and rehabilitation, this policy falls well within the realm of the reasonable" (quoting *Turner*, 482 U.S. at 89–90)).

Defendant Kienitz, as well as the grievance respondent who upheld Defendant Kienitz's initial decision, relied on this policy directive when reviewing Plaintiff's book. And, as the Court concluded in *Markham*, "there exists a valid, rational connection between this legitimate security interest and the action taken in this case." *Markham*, 2014 WL 4662185, at *10. Specifically, in *Markham*, which involved the same policy directive as the present case, the Court concluded that the remaining *Turner* factors did not weigh in Plaintiff's favor, explaining that "[t]he Policy Directive pursuant to which Defendant acted does not prevent Plaintiff from receiving mail or books, but instead only restricts Plaintiff's ability to possess material which constitutes a threat." *Id.*

Although it is clear that Plaintiff disagreed with Defendant Kienitz's rejection of the book titled, "So Far From Scarface: Th[e] Saga," arguing that the book itself was not on the restricted list (Compl., ECF No. 1, PageID.10), and that the book in question had "no more 'accounts of rape and drugs' than a James Patterson or Dean Koontz [novel]" and was "no differen[t]" than an R-rated movie shown by the MDOC, (ECF No. 1-8, PageID.52–53), Plaintiff does not allege that the book did not have "accounts of rape and drugs." Plaintiff's own allegations show that the book had content that, at a minimum, discussed the commission of criminal activity because Plaintiff does not dispute that there were "accounts of rape and drugs" in the book. (*See* ECF No. 1-8, PageID.52–53); *see also Munson v. Gaetz*, 673 F.3d 630, 635 (7th Cir. 2012) (discussing that the prisoner-plaintiff's complaint "provided the prison's legitimate interest in restricting his access to the books [that had drug-related content] and the rational connection between that interest and the restriction takes no imaginative dive into the depths of the prison officials' consciousness").

27

Moreover, if, as Plaintiff contends, other books or movies that the MDOC permitted were similar in content to the rejected book, this does not undermine the prison's decision to reject the specific book that Plaintiff wished to receive and also shows that Plaintiff had other alternatives. *See Munson*, 673 F.3d at 636 ("[I]t 'takes no great leap to understand the prison's reasons for wanting an article about a prison riot and images of gang signs' barred even though the prisoner 'had access to other writings and to television shows about prison riots.'" (quoting *Mays v. Springborn*, 575 F.3d 643, 649 (7th Cir.2009) (per curiam))); *see also Wells*, 546 F. App'x at 342 (concluding that the prisoner-plaintiff's "contention that other books available in prison contain[ed] similar information as well as other information that might be dangerous [wa]s not enough to show that [the prison official] acted irrationally or arbitrarily" because the rejection of the book "was rationally related to a legitimate penological interest in maintaining security" (citations omitted)); *cf. Markham*, 2014 WL 4662185, at *2 (discussing *Whitney v. Brown*, 882 F.2d 1068 (6th Cir.1989), and distinguishing that case because "[i]n *Whitney*, the prison policy left the inmates with no reasonable alternatives for exercising their religion because the policy effectively made a central element of the inmates' religious practice impossible");.

As Plaintiff acknowledges, he has access to other written materials, and he does not allege that he is otherwise restricted from speaking freely. Further, Plaintiff has not suggested any means by which the prison could protect its legitimate penological interest in protecting the prison population from having access to information about the commission of crimes other than by rejecting books with such depictions. Given the deference owed to prison administrators, *Turner*, 482 U.S. at 84–96, Plaintiff fails to state a First Amendment claim against Defendant Kienitz regarding the rejection of his book.

### iii.        Processing of Returned Mail

Plaintiff also alleges that Defendant Kienitz "improperly processed mail that was returned to [Plaintiff] from the post office, which consisted of a letter and two photos that [Plaintiff] purchased off of the prisoner store." (Compl., ECF No. 1, PageID.10.) Specifically, Plaintiff states that with respect to the returned mail, Defendant Kienitz "copied the letter and photos, confiscated the originals, and sent [Plaintiff] copies, depriving [Plaintiff] of [his] right to mail the property to whomever [he] wish[ed]." (*Id.*) In addition to these allegations, Plaintiff references grievances that he filed addressing this issue, and Plaintiff also attached these grievances to the complaint. (*Id.*, PageID.11 (referencing Exhibit I); ECF No. 1-9, PageID.55–58.) As set forth in Plaintiff's step I grievance, Plaintiff states:

> On Mar. 02, 2022, I placed in the U.S. mailbox a letter and two photos I purchased from the prisoner store. On Mar. 18, 2022, I received back a copy of the letter and a copy of the two photos, as if the letter came from my family, [but] the mail was returned to me from the post office (Return to Sender).

(ECF No. 1-9, PageID.56.) Plaintiff further states:

> The problem is this, whenever a prisoner receives mail that is prohibited, the MDOC always issues that prisoner a Rejection Notice and/or a contraband removal giv[ing] the prisoner the option of sending the property somewhere else. Unfortunately, I was not given that option . . . . As a means of resolution, I would like to send the photos to someone else, at my own expense, like every other prisoner.

(*Id.*) In the response to his grievance, the respondent stated:

> Prisoner Burrell is grieving his mail that was sent out and returned to sender. After checking with the mailroom, the mail in question was returned but the prisoner cannot receive mail that has been sent out and then back to the facility. The prisoner does however have the option to resend the mail out at his expense. The prisoner is choosing to send the mail to a new address.

(*Id.*) Plaintiff filed a step II grievance about the matter, and in response, the step II respondent stated: "Mail that is received from the U.S.P.S. is considered incoming mail. There would not be

a mail rejection or any form of MDOC notice, as incoming mail is copied and given to the prisoner unless there is a need for a rejection based on [Policy Directive] 05.03.118." (*Id.*, PageID.58.)

Many courts, including this Court and the Sixth Circuit, "have held that prison officials do not violate the First Amendment by inspecting an inmate's non-legal mail." *Longmire v. Michigan Dep't of Corr.*, No. 2:19-cv-103, 2019 WL 3282678, at *5 (W.D. Mich. July 22, 2019) (collecting cases), *aff'd*, No. 19-1853, 2020 WL 4514666 (6th Cir. Mar. 11, 2020); *Meadows v. Hopkins*, 713 F.2d 206, 208 (6th Cir. 1983) (upholding a policy in federal prisons that authorized the inspection of incoming and outgoing non-legal mail). Furthermore, the Fourth Amendment does not prohibit prison staff "from searching and confiscating mail" when the mail raises concerns regarding institutional security. *Young v. Mich. Dep't of Corr.*, No. 2:21-cv-96, 2021 WL 3700760, at *4 (W.D. Mich. Aug. 20, 2021); *see also Hubbard v. Mann*, No. 2:21-cv-55, 2021 WL 2845099, at *9 (W.D. Mich. July 8, 2021) ("[T]he Fourth Amendment did not prohibit Defendants from reading Plaintiff's legal mail and confiscating it where it raised concerns regarding institutional security.").

Although Plaintiff disagreed with the manner in which Defendant Kienitz processed this mail, from Plaintiff's allegations and the grievances incorporated by reference in the complaint, it is clear that Plaintiff was in fact permitted to re-send these documents to another address. Therefore, Defendant Kienitz's actions did not prevent Plaintiff from mailing the documents in question. Moreover, even assuming that the manner in which Defendant Kienitz processed these documents interfered with Plaintiff's ability to send mail in some manner, "isolated instances of interference with prisoners' mail" do not rise to the level of a constitutional violation under the First Amendment. *See Johnson*, 2000 WL 1175519, at *2 (citing *Gardner*, 109 F.3d at 431). Plaintiff's alleged inability to send the documents in question at the exact time that he wished to do so, or in the exact manner that he wished, appears to have been an isolated occurrence.

Accordingly, for all of the reasons set forth above, Plaintiff fails to state a First Amendment claim against Defendant Kienitz regarding the processing of his returned mail.

## Conclusion

Having conducted the review required by the PLRA, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim under 28 U.S.C. § 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.

Dated: November 23, 2022                    /s/ Hala Y. Jarbou
                                             HALA Y. JARBOU
                                             CHIEF UNITED STATES DISTRICT JUDGE